UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PASCUAL A. CIRIACOS,                                          :
                                                             :
                               Petitioner,                   :
                                                             :        11 CV 3078 (HB)
                - against -                                   :        09 CR 394 (HB)
                                                             :
UNITED STATES OF AMERICA,                                     :        OPINION & ORDER
                                                             :
                               Respondent.                   :
------------------------------------------------------------------------x

Hon. Harold Baer, Jr., District Judge[1]:

On October 1, 2009, Pascual A. Ciriacos ("Petitioner") pleaded guilty to one count of conspiracy to distribute and possession with intent to distribute cocaine pursuant to 21 U.S.C. § 846. Petitioner now moves to vacate, set aside, or correct his federal criminal sentence pursuant to 28 U.S.C. § 2255. For the reasons stated below, the petition is denied.

## I.   BACKGROUND

On April 21, 2011, Petitioner, represented by counsel, filed the present motion. Petitioner makes two claims: "1. Petitioner's conviction, given his limited knowledge of the English language was obtained in violation of the Fifth and Sixth Amendments of the United States Constitution. 2. Petitioner's sentence was obtained, given his fragile health, in a manner that it is a cruel and unusual punishment, and in violation of the Eight[h] Amendment of the United States Constitution." Pet. 1–2. Counsel requested a sixty-day extension of time to file a subsequent memorandum of law in support, and counsel filed the memorandum 168 days later on October 5, 2011. The Court never ruled on the requested extension. The Government filed a brief in opposition on November 4, 2011.

## II.   DISCUSSION

To be granted relief, Petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a).

---

[1] James Lee, a third-year student at Benjamin N. Cardozo School of Law and a Fall 2011 intern in my Chambers, provided substantial assistance in researching and drafting this opinion.

1

**A.      The petition lacks specificity**

The petition "must specify all the grounds for relief which are available to the [Petitioner] and of which he has or, by the exercise of reasonable diligence, should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted). Although Petitioner has based his grounds for relief on the Fifth, Sixth, and Eighth Amendments, no facts are offered in support of the claims other than his limited knowledge of English and fragile health. Petitioner sought so far as I can tell permission to file an additional memorandum. That memorandum was filed and does not advance his cause.[2] Rather, it argues:

> Due to the particular circumstances of this case there exists a clear possibility that any kind of sentence against Petitioner is a form of cruel and unusual punishment . . . .

> It is interesting to note that Courts are concerned with how non understanding of [a] proceeding can affect Due Process . . . .

> To demand from a prisoner knowledge of the English language without regard of his physical, and mental capacity, in order to provide him with a Court ordered treatment seems like a Due Process and Equal Protection violation[].

> At present there are prison facilities far from New York where the program is conducted in Spanish, but to transfer [Petitioner] is not the best remedy as he needs to be close to his family and to medical treatment.

Pet'r's Br. 2–3. With the possible exception of what "is not the best remedy", these arguments are not even conclusory. This is not the first time that counsel for Petitioner has disappointed courts in this Circuit. *See, e.g.*, *Reid v. Gonzales*, 478 F.3d 510, 511–13 (2d Cir. 2007) ("Petitioner's counsel presents this Court with a series of sparse and unsupported arguments . . . ."); *Lewis v. Gonzales*, 481 F.3d 125, 128 (2d Cir. 2007) (chastising counsel for failing to review his mail in a timely fashion); *Laguerre v. Gonzales*, 183 F. App'x 146, 147 (2d Cir. 2006) ("[Petitioner's] perfunctory brief specifies no ground or argument that would support relief.").

With significant credit to the United States Attorney, the substance of Petitioner's motion can be stated as follows: "(i) his sentence violated the Eighth Amendment, (ii) the requirement that [Petitioner] speak English as a prerequisite for admission into the Bureau of Prison

---

[2] The untimely memorandum must "relate back" to the original petition. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005); *see also* Fed. R. Civ. Pro. 15(c). In order for a subsequent document to relate back to the original motion, the two must be "tied to a common core of operative facts". *See Mayle*, 545 U.S. at 664. The Court can barely discern the operative facts of either submission, let alone whether they are related.

Residential Drug Abuse Program ('RDAP') at Fort Dix . . . violates his due process and equal protection rights, and (iii) expected delays in [Petitioner's] admission into the RDAP violates his due process and equal protection rights." Resp't's Br. 1.

**B.    Petitioner waived the right to appeal or to litigate under 28 U.S.C. §§ 2241, 2255**

The Second Circuit has consistently recognized that "a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." *United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008) (internal quotation marks omitted).   "In plea agreements, 'waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Ready*, 82 F.3d 551, 556 (2d Cir. 1996) (quoting *Brady v. United States,* 397 U.S. 742, 748 (1970)). The Second Circuit enforces waivers "even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). Waivers of the right to collaterally attack a sentence are enforceable under the same conditions as waivers of the right to directly appeal. *See, e.g.*, *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001).

During the plea allocution, the Court explained to Petitioner the rights that he had as a criminal defendant and the significance of giving up those rights. *See* Plea Tr. 6:22–9:11, Oct. 1, 2009. With the aid of an official court interpreter,[3] Petitioner acknowledged that he understood his rights, *id.* at 7:6–19, 8:6–15, 9:6–11, and affirmed that he desired to give them up, *id.* at 7:16, 8:15. He acknowledged that he was waiving these rights voluntarily and knowingly. *Id.* at 9:4–6, 15:1–4. In order to ensure that Petitioner understood what he was pleading guilty to, the Court asked Petitioner to recount the events that constituted the crime. Petitioner described what happened, *id.* at 17:2–18:11, and admitted his guilt, *id.* at 16:17–18, 17:2–3, 18:11.

---

[3] I reject Petitioner's claim that his limited command of English, coupled with the fact that he did not have an interpreter for each and every aspect of his case, alone renders his conviction or waiver invalid. *See Sarder v. United States*, Nos. 11 Civ. 7873, S1 09 Crim. 948, 2012 WL 1314159, at *6–8 (S.D.N.Y. Apr. 17, 2012) ("[P]etitioner does not claim that he ever informed his counsel or for that matter anyone else of the purported language barrier."); *United States v. Vargas*, 871 F. Supp. 623, 625 (S.D.N.Y. 1994) ("[Petitioner] cannot be permitted to sit by without raising the issue or asking his attorney to do so, and then claim that his conviction should be vacated because of a matter which would have been obvious to him and for which a remedy was readily available if requested. If such a strategy were to be permitted to succeed, there would be every incentive for one not fluent in English to avoid mention of the language barrier until conviction, and then to raise it for the first time.").

As part of the plea agreement, Petitioner waived the right to directly appeal or to litigate under 28 U.S.C. §§ 2241, 2255. Written Plea Agreement ("Wr. Plea") 5, Sept. 30, 2009 ("It is agreed (i) that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range . . . ."). At the plea allocution, the Government summarized the contents of the written plea agreement, including the waiver. *See* Plea Tr. 11:21–24 ("Defendant will not . . . litigate under Title 28 United States Code Section 2255, any sentence within or below the stipulated guideline range . . . ."). The Court verified whether the description of the plea agreement as stated by the Government was in accord with Petitioner's understanding of the plea agreement he signed. *Id.* at 12:11. Petitioner denied that he had been influenced or coerced to plead guilty, *see id.* at 14:3–14:25, and consistently affirmed that he was pleading voluntarily and of his own free will, *see, e.g.*, *id.* at 15:4. Therefore the waiver is valid and enforceable, and Petitioner is precluded from challenging under 28 U.S.C. § 2255 his sentence of 94 months' imprisonment, which, it is worth noting, was well below the Sentencing Guidelines range of 108 to 135 months calculated by probation and agreed to by the parties.

## C.     Petitioner's claims are meritless

Even without the above admissions by Petitioner, he would not be entitled to relief. It is "exceedingly rare" for a court to conclude that a sentence within statutory limits is so disproportionately severe as to constitute cruel and unusual punishment. *United States v. Caracappa*, 614 F.3d 30, 44 (2d Cir. 2010) (internal quotation marks omitted). Such extraordinary circumstances might include a punishment that is barbaric or vastly disproportionate to the crime committed. *See Taylor v. Poole*, No. 06 Civ. 760, 2010 WL 419968, at *9 (W.D.N.Y. Jan. 29, 2010) (citing *Solem v. Helm*, 463 U.S. 277, 284 (1983)). Petitioner received a sentence that was fourteen months less than the floor of the applicable Guidelines Range and significantly below the statutory maximum. *See* 21 U.S.C. § 841(b)(1)(A). I justified the lower sentence in part "due to the fact of the defendant[']s overwhelming medical condition and his financial support of his family." Judgment, Statement of Reasons 3. This sentence does not violate the Eighth Amendment and was tailored specifically to Petitioner's circumstances. I therefore reject counsel's equivocal statement that "there exists a clear possibility that any kind of sentence against Petitioner is a form of cruel and unusual punishment

. . . ." Pet'r's Br. 2. The idea that a defendant's personal circumstances could insulate him from "any kind of sentence" is untenable.

Another ground pursued by Petitioner is the impediments that surround entry into the RDAP program. As it turned out, they include the requirement that Petitioner speak English at the RDAP program at Fort Dix and the delay in his admission. While both are unfortunate, they fail to provide a viable challenge to the sentence or the manner of its execution.[4] Petitioner has provided no facts or argument to support the purported violations of his due process and equal protection rights. I recommended that Petitioner be "incarcerated at Fort Dix, N.J., and that he be permitted to apply to the residential drug abuse program when he becomes eligible." Judgment 2. I took Petitioner's medical condition, drug addiction, and family into account when I sentenced him to a reduced term, recommended he be incarcerated in New Jersey, and requested he be permitted to apply to the RDAP. I did this because my understanding was that Fort Dix provided a Spanish-speaking RDAP program, while at the same time he would be close to his family. The District Court can recommend the place of incarceration; it is without power to order the Bureau of Prisons to send the Petitioner to a specific institution. That decision depends on several variables, such as available space and the type of crime.

I am disheartened by dearth of Spanish-speaking RDAPs, a shortage that renders my recommendation near meaningless. Hispanics are now the largest minority in federal prisons, comprising forty percent of inmates.[5] Spanish-speaking RDAPs are available in just four states: Alabama, California, Florida, and Texas.[6] Put another way, there is not a single facility in the Northeast, where a goodly proportion of the Hispanic offenders live, that provides a Spanish-speaking RDAP program. Despite BOP's acknowledgement that RDAPs are effective for reducing both recidivism and relapse (not to mention that RDAPs "make[] a positive difference in the lives of inmates and improve[] public safety"),[7] there has not been a funding increase

---

[4] The United States Attorney also raises the questions of whether Petitioner may bring these claims pursuant to § 2255 and whether the Southern District of New York is the proper forum. *See* Resp't's Br. 14–15.

[5] Mark H. Lopez & Michael Light, Pew Hispanic Center, *A Rising Share: Hispanics and Federal Crime* (2009), *available at* http://www.pewhispanic.org/2009/02/18/a-rising-share-hispanics-and-federal-crime/.

[6] Alan Ellis & J. Michael Henderson, *Federal Prison Guidebook* 38–40 (rev. ed. 2010–2012).

[7] U.S. Dep't of Justice, *The Federal Bureau of Prisons Annual Report on Substance Abuse Treatment Programs Fiscal Year 2011: Report to the Judiciary Committee, United States Congress* 8 (Dec. 2011).

dedicated to an expansion of the RDAP since 2003.[8] The last time that BOP referred to the RDAP waiting list was in its Fiscal Year 2008 report to Congress, when the waiting list averaged more than 7,600 inmates.[9] While I do not know the current status of delays for entry into an RDAP, and I have no way at present to determine how the waiting list is impacted by the lack of Spanish-speaking RDAPs, it seems safe to assume that we can do better.[10] Otherwise, judges are left to recommend either that an inmate be incarcerated near family *or* at a facility that provides appropriate treatment—an unnecessary tradeoff that serves only to squander our effectiveness. It seems at least unfortunate that those who control drug treatment funds while mouthing the vital need to reduce addiction have for at least a decade dragged their feet in adding Spanish-speaking RDAPs—the one universally agreed upon treatment program that seems at least moderately helpful.

### III.  CONCLUSION

For the foregoing reasons, and not without trepidation, the petition is denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. As the petition makes no substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. 28 U.S.C. § 2253. The Clerk of Court is instructed to close this motion and the case.

SO ORDERED.

Date:

New York, New York

**HAROLD BAER, JR.**
**United States District Judge**

---

[8] U.S. Dep't of Justice, *The Federal Bureau of Prisons Annual Report on Substance Abuse Treatment Programs Fiscal Year 2008: Report to the Judiciary Committee, United States Congress* 10 (Jan. 2009).

[9] *Id.*

[10] *See* Alan Ellis & Todd Bussert, *Looking at the BOP's Amended RDAP Rules*, 26 Crim. J., Fall 2011, at 37–40 (noting the effectiveness of the program and recommending, *inter alia*, that BOP "restore the Spanish-speaking RDAP classes[] and eliminate the baseless cut-off date for RDAP eligibility").